**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| CELL SCIENCE SYSTEMS CORPORATION | CIVIL NO. |
| VERSUS | 17-1658-SDD-RLB |
| LOUISIANA HEALTH SERVICE AND INDEMNITY COMPANY d/b/a BLUE CROSS AND BLUE SHIELD OF LOUISIANA | |

## RULING

This matter is before the Court on the *Motion to Dismiss Plaintiff's Complaint*[1] filed by Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") pursuant to Federal Rules of Civil Procedure 8, 12(b)(1), and 12(b)(6). Plaintiff Cell Science Systems Corporation ("CSS") has filed an *Opposition*[2] to this motion, to which BCBSLA filed a *Reply*,[3] and CSS filed a *Sur-Reply*.[4] Subsequently, CSS filed an *Amended and Supplemental Complaint*[5] which prompted the Court to order the Parties to file supplemental briefs, if necessary.[6] The Parties complied with this *Order* and submitted supplemental briefing for the Court's consideration.[7] For the reasons which follow, the Court finds that BCBSLA's motion should be granted pursuant to Rule 12(b)(1) for lack of jurisdiction because CSS lacks standing to bring this

---
[1] Rec. Doc. No. 14.
[2] Rec. Doc. No. 21.
[3] Rec. Doc. No. 26.
[4] Rec. Doc. No. 27.
[5] Rec. Doc. No. 32.
[6] Rec. Doc. No. 33.
[7] Rec. Doc. Nos. 35, 37, 42, & 45.

Document Number: 47191

suit.

## I. BACKGROUND

CSS is the developer of the ALCAT test, a proprietary blood test that has been in use for over thirty years, which identifies trigger foods and other substances in a patient that manifest in several inflammatory conditions and pathologies.[8] CSS claims the ALCAT test was utilized by the healthcare providers for the plan participants and beneficiaries in this case to identify food and chemical sensitivities in order to assess treatment options.[9] CSS filed suit against BCBSLA as plan administrator and plan fiduciary seeking payment for the tests conducted on patients who are members of the health benefit plans administered by BCBSLA.[10] CSS alleges that payment for the ALCAT tests was refused by BCBSLA on the basis that it was considered "investigational."[11] CSS further alleges that the plan participants/beneficiaries identified in this lawsuit assigned their contractual rights and benefits in and to the payment for the ALCAT tests to CSS.[12]

The plan at issue is governed by the Employee Retirement Income Security Act ("ERISA").[13] CSS asserts claims under ERISA § 502(a)(1)(B), § 502(c), and § 502(a)(3). BCBSLA moves to dismiss CSS's *Complaint* pursuant to Rule 12(b)(1) for lack of jurisdiction on the ground that CSS lacks standing to bring these claims and Rule 12(b)(6) for failure to state a claim upon which relief may be granted as to the substantive ERISA

---

[8] Rec. Doc. No. 1, ¶ 4.
[9] *Id.*
[10] *Id.* at ¶¶ 7-8.
[11] *Id.* at ¶ 9.
[12] *Id.* at ¶ 12.
[13] 29 U.S.C. § 1001, *et seq.*

claims. BCBSLA contends CSS lacks standing because it has not demonstrated a valid assignment of rights from the participants or beneficiaries herein and, further, CSS cannot demonstrate a valid assignment because any alleged assignment of rights is null and void pursuant to the anti-assignment provision in the plan at issue. Because the Court finds that CSS has failed to demonstrate standing, the Court will not address the Rule 12(b)(6) claims in this ruling.[14]

## II. LAW & ANALYSIS

### A. Rule 12(b)(1) Motion to Dismiss

"When a motion to dismiss for lack of jurisdiction 'is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.'"[15] If a complaint could be dismissed for both lack of jurisdiction and for failure to state a claim, "'the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6).'"[16] The reason for this rule is to preclude courts from issuing advisory opinions and barring courts without jurisdiction "'from prematurely dismissing a case with prejudice.'"[17]

"Article III standing is a jurisdictional prerequisite."[18] If a plaintiff lacks standing to

---

[14] Accordingly, CSS's July 9, 2018 submission of the Fifth Circuit's decision in *Innova Hospital v. Blue Cross Blue Shield of Georgia, et al*, No. 14-11300 as supplemental authority (Rec. Doc. No. 45) is inapposite as that case addressed a Rule 12(b)(6) motion to dismiss for failure to state a claim.
[15] *Crenshaw–Logal v. City of Abilene, Texas*, 436 Fed.Appx. 306, 308 (5th Cir.2011)(quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001); see also *Randall D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 762 (5th Cir.2011); Fed.R.Civ.P. 12(h)(3)).
[16] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977)).
[17] *Id.* (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998), and *Ramming*, 281 F.3d at 161)
[18] *Crenshaw–Logal*, 436 Fed.Appx. at 308 (citing *Steel Co.*, 523 U.S. at 101, 118 S.Ct. 1003, and *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir.1989)).

bring a claim, the Court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate.[19] The party seeking to invoke federal jurisdiction bears the burden of showing that standing existed at the time the lawsuit was filed.[20] In reviewing a motion under 12(b)(1) for lack of subject matter jurisdiction, a court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.[21]

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is characterized as either a "facial" attack, *i.e.*, the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, *i.e.*, the facts in the complaint supporting subject matter jurisdiction are questioned.[22] A facial attack happens when a defendant files a Rule 12(b)(1) motion without accompanying evidence.[23] In a facial attack, allegations in the complaint are taken as true.[24]

If the defendant brings a factual attack, a court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction.[25] A defendant making a factual attack on a complaint may provide supporting affidavits, testimony, or other admissible evidence.[26] The plaintiff, to satisfy

---

[19] *Whitmore v. Arkansas*, 495 U.S. 149, 154–55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990); *Chair King, Inc. v. Houston Cellular Corp.*, 131 F.3d 507, 509 (5th Cir.1997).
[20] *M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001); *Ramming*, 281 F.3d at 161.
[21] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.1981).
[22] *In re Blue Water Endeavors, LLC*, Bankr. No. 08–10466, Adv. No. 10–1015, 2011 WL 52525, *3 (E.D.Tex. Jan. 6, 2011)(citing *Rodriguez v. Texas Comm'n of Arts*, 992 F.Supp. 876, 878–79 (N.D.Tex.1998), *aff'd*, 199 F.3d 279 (5th Cir. 2000)).
[23] *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).
[24] *Blue Water*, 2011 WL 52525 at *3 (citing *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir.1995)).
[25] *Id.* (citing *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)).
[26] *Paterson*, 644 F.2d at 523.

its burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists.[27] The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under Rule 56(c)[28] because, "[u]nlike in a facial attack where jurisdiction is determined upon the basis of allegations of the complaint, accepted as true[,] when a factual attack is made upon federal jurisdiction, no presumption of truthfulness attaches to the plaintiffs' jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In a factual attack, the plaintiffs have the burden of proving that federal jurisdiction does in fact exist."[29] In resolving a factual attack on subject matter jurisdiction under Rule 12(b)(1), the district court, which does not address the merits of the suit, has significant authority "'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'"[30] Because the arguments made by BCBSLA relating to standing rely on the documentary evidence attached to its briefing on the motions to dismiss, and because BCBSLA has challenged the facts asserted in the *Complaint*, it has presented a factual attack on CSS's standing.

### B. Factual Attack to the Allegation of Assignments of Rights

CSS alleges that the plan participants/beneficiaries identified in the *Complaint* have each "assigned his or her rights and benefits in and to the payment for the ALCAT test to CSS."[31] CSS further alleges that, "[b]y virtue of the assignment of benefits it

---

[27] *Id.*
[28] *Robinson*, 2008 WL 4692392 at *10 (citing *Garcia*, 104 F.3d at 1261).
[29] *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).
[30] *Robinson v. Paulson,* No. H–06–4083, 2008 WL 4692392, *10 (S.D.Tex. Oct. 22, 2008)(quoting *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997), and citing *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986)).
[31] Rec. Doc. No. 1, ¶ 5. Later allegations state: "These participants and/or beneficiaries assigned their contractual rights and benefits in and to the payment for the ALCAT test to CSS." *Id.* at ¶¶ 11, 12, 13, 14,

Document Number: 47191
Page 5 of 15

obtained from each plan participant and plan beneficiary, [CSS] obtains participant/beneficiary status pursuant to 29 U.S.C. § 1132(a)(1)(B)."[32] CSS did not attach any of the purported assignments to its *Complaint*, *Amended and Supplemental Complaint*, or any of the four briefs submitted in response to the pending motion to dismiss. Further, CSS has not provided the Court an excerpt of the assignment language contained in the alleged assignments that would expressly set forth the rights purportedly assigned.

BCBSLA argues that CSS has not alleged that it has been assigned the right to file suit to obtain benefits or to assert specific claims under ERISA. BCBSLA cites controlling jurisprudence holding that an assignment of ERISA claims must be express and knowing and is narrowly construed.[33] BCBSLA also relies on this Court's recent holding that an assignment of the right to receive payment does not constitute a right to pursue benefits or other claims under ERISA.[34] Because CSS has only alleged that it was assigned the right to receive payment, not any other rights to pursue other claims, it lacks standing to pursue all non-payment related claims brought under ERISA. Moreover, BCBSLA contends CSS disclosed the purported assignments in its Rule 26(a) Disclosures, but failed to disclose an assignment form for four of the claimed patients, and in one instance, the assignment form provided is unsigned. Thus, BCBSLA has

---

& 15.

[32] *Id.* at ¶ 22.

[33] *Texas Life, Acc. Health & Hosp. Service Ins. Guar. Ass'n v. Gaylord Entertainment Co.*, 105 F.3d 210, 218 (5th Cir. 1997).

[34] *See Cardiovascular Specialty Care Center of Baton Rouge, LLC v. United Healthcare of Louisiana, Inc.*, 2017 WL 2408125 at *5 (M.D. La. June 2, 2017)(quoting *Touro Infirmary v. American Maritime Officer*, No. 2:07-cv-01441-EEF-KWR, 2007 WL 4181506 (E.D. La. Nov. 21, 2007)("The court in *Touro Infirmary*, relying on the decisions of other district courts, found that this language was 'not a full assignment of benefits'; the language 'simply authorizes direct payment to [the healthcare provider] and makes the patient [r]esponsible for any charges not paid by the patient's health plan.'")).

challenged the factual allegation that CSS has obtained valid assignments on behalf of all of the claimed plan participants and the fact that CSS has been assigned all benefits relating to the ERISA plan at issue herein.

Notwithstanding the claim that the purported assignments are invalid, do not exist in some instances, and do not contain express assignment of all of the rights CSS asserts in this action, BCBSLA maintains than any assignment of rights is nevertheless unenforceable and invalid under the plain, unambiguous language in the plan that precludes any form of assignment with the exception of Hospitals:

> A Plan Participant's rights and Benefits under this Plan are personal to him and may not be assigned in whole or in part by the Plan Participant. The Claims Administrator will recognize assignments of Benefits to Hospitals if both this Plan and the Provider are subject to La. R.S. 40:2010. If both this Plan and the Provider are not subject to La. R.S. 40:2010, the Claims Administrator will not recognize assignments or attempted assignments of Benefits.[35]

Based on the above provision in the plan at issue, BCBSLA contends the plan participants/beneficiaries could not have validly assigned their rights to CSS; thus, CSS lacks standing to bring any claims asserted in this lawsuit.

CSS claims that, on a motion to dismiss, "a plaintiff is simply not required to put on such evidence at the pleading stage."[36] While this is generally true, as set forth above, once a factual attack has been made on a complaint challenging subject matter jurisdiction, a plaintiff has the burden of <u>proving, by a preponderance of the evidence</u>, that federal jurisdiction does in fact exist.[37] CSS alleged the plan participants/beneficiaries at issue had assigned their rights to payment; however, once this fact was challenged, CSS

---

[35] Rec. Doc. No. 14-3 at 13, 70 (pp. 9, 66 of the Plan).
[36] Rec. Doc. No. 37 at 5.
[37] *See supra* n. 26 & n. 28 (emphasis added).
Document Number: 47191

has the burden to submit evidence of the alleged assignments of rights to establish its standing and this Court's jurisdiction. Indeed, although CSS was granted leave to amend its *Complaint*, and file supplemental briefs, with full knowledge of the factual attack asserted in BCBSLA's motion, CSS failed to present any evidentiary support for its assertion of standing. This repeated failure undermines the allegation that CSS has obtained a valid assignment of the rights it asserts herein. Further, CSS's repeated protestations that it does not have to "prove its case" at this procedural posture is simply contrary to controlling law because its standing has been factually attacked.[38] BCBSLA is entitled to dismissal on this basis alone.

<u>Enforceability of the Anti-Assignment Provision</u>

CSS contends the Fifth Circuit has held that anti-assignment clauses apply only to unrelated third party creditors. In support of this assertion, CSS presents the same argument and relies on the same case as the plaintiff in *Memorial Herman Health System v. Pennwell Corporation Medical and Vision Plan*.[39] This argument was rejected by the *Memorial Herman* court:

> Citing <u>Tango Transport v. Healthcare Financial Services L.L.C.</u>, 322 F.3d 888, 891–94 (5th Cir. 2003), plaintiff argues that "[t]o deny Plaintiff standing in this case is wholly inequitable and would send a chilling effect to other health care providers from accepting patients covered under self funded plans." Plaintiff also cites <u>Hermann Hospital v. MEBA Medical & Benefits Plan</u> ("<u>Hermann II</u>"), 959 F.2d 569, 574 (5th Cir. 1992), <u>overruled in part on other grounds by Access Mediquip</u>, 698 F.3d at 229, for its holdings that an

---

[38] The Court is likewise unpersuaded by CSS's alternative request for jurisdictional discovery based on the complaint that it was "ambushed" by BCBSLA with thousands of pages of purported plan documents only two days prior to the filing of the pending motion, which was January 3, 2018. *See* Rec. Doc. No. 27 at 2; Rec. Doc. No. 37 at 9. CSS was granted leave to amend its complaint, which it did on April 24, 2018, over three months after having received these plan documents. The Court allowed supplemental briefing on this motion as late as July 2018. Despite having these documents for over six months at the time of its latest filing relevant to this motion, CSS has never submitted any documentation to support its allegations nor has it submitted any authority or evidence in support of its objection to the authenticity of the plan documents.
[39] No. H-17-2364, 2017 WL 6561165 (S.D. Tex. Dec. 22, 2017).

Document Number: 47191

"[a]nti-[a]ssignment clause did not apply to medical service providers," and that "the anti-assignment clause applied only to unrelated third party assignees such as a creditor who may attempt to obtain a voluntary assignment to cover a debt that had no relationship, or 'nexus', with the Plan or its benefits." Neither the holding in Tango nor in Hermann II support plaintiff's argument that anti-assignment provisions are unenforceable against health care providers.[40]

The court analyzed both cases and held that "[c]ontrary to plaintiff's argument, Tango did not hold that a medical provider could have derivative standing to sue an ERISA plan without a valid assignment."[41] The court also explained that the anti-assignment clause in *Herman II* was easily distinguished from the clause before the court, and the Fifth Circuit did not hold that an anti-assignment provision only applies to unrelated third party creditors:

> This anti-assignment provision does not in any way resemble either the third-party creditor anti-assignment clause at issue in Hermann II or a typical spendthrift trust provision. Moreover, reasoning that Congress intended employers and employees to retain contractual freedom over ERISA–governed employee-benefit plans, the Fifth Circuit subsequently recognized that anti-assignment provisions are generally effective and will operate to render a purported assignment invalid. See LeTourneau, 298 F.3d at 352 ("Neither Hermann I nor Hermann II stands for the proposition that all anti-assignment clauses are per se invalid vis-à-vis providers of health care services."). See also Louisiana Health Services & Indemnity Co. v. Rapides Healthcare System, 461 F.3d 529, 537 (5th Cir. 2006), cert. denied, 549 U.S. 1279, 127 S.Ct. 1831, 167 L.Ed.2d 319 (2007) ("We have held that an assignee has derivative standing to enforce claims under ERISA § 502, thus permitting assignments when not precluded by the plan terms. We have also held that, absent a statute to the contrary, an anti-assignment provision in a plan is permissible under ERISA."). Plaintiff's argument that the anti-assignment provision included in the Plan is unenforceable against a health care provider therefore has no merit.[42]

Accordingly, CSS's blanket assertion that "the Fifth Circuit has held that anti-

---

[40] *Id.* at *6.
[41] *Id.*
[42] *Id.* at *7.

assignment clauses apply only to unrelated third party creditors,"[43] is simply incorrect, and CSS has offered no argument or evidence to demonstrate that the anti-assignment provision herein is similar to those in *Tango* or *Herman II*. The Court finds this argument without merit.

ERISA Estoppel

CSS also argues that BCBSLA should be estopped from asserting any anti-assignment provision because CSS relied to its detriment on material misrepresentations made by BCBSLA. CSS's *Amended and Supplemental Complaint* alleges:

27.

On several dozen, if not hundreds, of previous occasions, [BCBSLA] paid for the ALCAT testing claims of the participants and beneficiaries. In correspondence, … Blue Cross admitted that it had previously paid for ALCAT testing.

28.

The only reason Blue Cross gave to CSS for the denial of payment for the ALCAT testing for the participants and beneficiaries who are named in this lawsuit was that the ALCAT testing was deemed by Blue Cross to be "investigational."

29.

Prior to the denial of the subject claims in the administrative process, CSS reasonably believed that Blue Cross would pay the subject claims and relied, to its detriment, on this belief in providing the ALCAT testing services for these patients and by taking assignments from them.[44]

The *Amended Complaint* also refers to several dated items of correspondence in which BCBSLA is alleged to have denied coverage for this testing as investigational.[45] CSS

---

[43] Rec. Doc. No. 37 at 1.
[44] Rec. Doc. No. 32.
[45] *Id.* at ¶ 30.
Document Number: 47191

further alleges that BCBSLA denied coverage although it had "expressly preauthorized service/treatment for each insured patient."[46]

CSS again relies on *Herman II*, arguing that BCBSLA should be estopped from asserting and anti-assignment clause defense because it was not the reason given for the denial of benefits; rather, the only reason given for the denial was because the test was deemed "investigational." CSS cites cases wherein the Fifth Circuit and district courts hold that "courts reviewing an administrator's denial of benefits consider only the actual basis on which the administrator denied the claim, 'not its post-hoc rationalization[s].'"[47] But CSS confuses the issue presently before the Court. On the current 12(b)(1) motion, the Court is not reviewing the reason for the denial of the coverage by the plan administrator. The Court is reviewing whether CSS has standing to assert a challenge to the denial at all. These are not the same issues and do not require the same reasoning.

CSS's reliance on *Herman II* is also, again, misplaced. In *Hermann II*, the Fifth Circuit held that a plan was estopped from raising an anti-assignment provision in its plan agreement.[48] The plaintiff, a hospital to whom a patient had assigned her rights under ERISA, had called the plan when the patient was first admitted and had been told by plan representatives that the patient was covered.[49] For six months while the patient was in the hospital, the hospital repeatedly attempted to obtain payment for the services it was providing, but the plan continuously postponed payment, asserting only that it was

---

[46] *Id.*
[47] *Koehler v. Aetna Health Inc.*, 683 F.3d 182, 190 n.18 (5th Cir. 2012)(quoting *Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 395–96 n.4 (5th Cir. 2006)).
[48] 959 F.2d 569.
[49] *Id.* at 574.

"investigating" the claim.[50] These are not the same allegations before the Court. While there is an allegation that the ALCAT testing was pre-authorized by BCBSLA,[51] there is no allegation or evidence that BCBSLA continuously postponed payment asserting that it was investigating CSS's claim for payment. Rather, CSS alleges that BCBSLA denied the coverage, with no claim of any delay, on the grounds that the testing was investigational, not because BCBSLA was investigating the claims.

BCBSLA maintains that CSS has made no allegations that would satisfy the Fifth Circuit's test for ERISA estoppel. In *Mello v. Sara Lee Corp.*, the Fifth Circuit explicitly adopted ERISA estoppel as a cognizable theory of recovery that requires a plaintiff to establish: "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances." [52]

BCBSLA contends CSS has not alleged any material misrepresentations on the part of BCBSLA; rather, it only alleges that, based on prior payment, CSS believed that BCBSLA would continue to pay for the testing. Further, BCBSLA contends CSS has not alleged that BCBSLA ever represented that it would not enforce the anti-assignment provisions in its plan. BCBSLA also argues CSS has not demonstrated reasonable reliance.[53] Although it has attached no documentation for either allegations, CSS has

---

[50] *Id.*
[51] In many ERISA cases, preauthorization letters will often indicate that the claim is still subject to review or have a disclaimer that there is no guarantee of payment. Because CSS did not submit these preauthorization letters for the Court's review, the Court cannot evaluate if it was reasonable for CSS to rely on a preauthorization, particularly since any reliance on such a preauthorization letter to modify the terms of the plan would be unreasonable. *See Ponstein v. HMO Louisiana, Inc.*, No. 08-663, 2009 WL 1309737 at* 7 (E.D. La. May 11, 2009).
[52] 431 F.3d 440, 444 (5th Cir. 2005).
[53] The Court notes that, as set forth above, because CSS's ERISA estoppel claim is in response to BCBSLA's factual attack on its standing, CSS must prove by a preponderance of the evidence that BCBSLA is estopped from applying its anti-assignment provision in this case. It insufficient on this factual attack to merely rely on the allegations in the pleadings.

alleged that it reasonably believed BCBSLA would pay for the testing based both on past payments and the preauthorization letters for the testing at issue herein. BCBSLA claims that, as a matter of law, estoppel may only be invoked when the relevant plan provision is ambiguous because a party's reliance cannot be reasonable if it is inconsistent with the terms of the plan documents.[54] Finally, BCBSLA maintains that CSS has not demonstrated that "extraordinary circumstances" exist in this case.

CSS curiously argues that BCBSLA "misstates the elements required to establish estoppel in an ERISA case" by relying on the standard set forth by the Fifth Circuit in *Mello* because *Mello* was an appeal from the Northern District of Mississippi relying on Mississippi state estoppel law.[55] CSS contends this Court should apply the Louisiana state law standard for detrimental reliance, as the counterpart to the common law concept of estoppel, to this case. However, CSS has not asserted a state law claim for detrimental reliance, and CSS did not cite a single case to support its flawed proposition that Louisiana state law on detrimental reliance is the proper standard for an ERISA estoppel claim. Moreover, the Court did not locate a single case wherein a federal district court in Louisiana applied the Louisiana state law standard for detrimental reliance to an ERISA-estoppel claim rather than the standard set forth by the Fifth Circuit. Indeed, several Louisiana district courts have applied the *Mello* test to claims of ERISA estoppel, and this court will not depart from the test set forth by the Fifth Circuit.[56]

---

[54] *See Mello*, 431 F.3d at 447.
[55] Rec. Doc. No. 37 at 6.
[56] *See Malbrough v. Kanawha Ins. Co.*, 943 F.Supp.2d 684, 695 (W.D. La. 2013); *O'Brien v. Hartford Life and Acc. Ins. Co.*, 932 F.Supp.2d 703, 715 (E.D. La. 2012); *French v. Dad Behring Life Ins. Plan*, 906 F.Supp.2d 571, 578-79 (M.D. La. 2012); *Briscoe v. Energy Transfer Partners, LP*, No. 14-00433-BAJ-EWD, 2016 WL 1126494 at *8 (M.D. La. Mar. 18, 2016).

Perhaps based on the misconception that the *Mello* test for ERISA estoppel did not apply to this case, CSS fails to address the three factors that must be satisfied. Even if CSS could establish a material misrepresentation and reasonable reliance, it has not alleged nor argued that the third requirement of extraordinary circumstances exists in this case.

In *High v. E-Systems, Inc.*, the Fifth Circuit acknowledged that it did not explain in *Mello* or other case law what constitutes extraordinary circumstances in an ERISA-estoppel analysis.[57] In *French v. Dade Behring Life Ins. Plan*, an ERISA case brought in this district, the court recognized that the Fifth Circuit cited with approval the Third Circuit's treatment of the issue.[58] The court noted that:

> Under the Third Circuit's approach, extraordinary circumstances "generally ... involve acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or commission of fraud."[59]
>
> The Third Circuit has also suggested that extraordinary circumstances may exist where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled.[60] It has also suggested that extraordinary circumstances could exist where misrepresentations were made to an especially vulnerable plaintiff.[61]

There is no allegation, argument, or evidence offered by CSS that would support a finding of extraordinary circmstances in this case. Accordingly, for the reasons set forth above, CSS's estoppel claim fails, and BCBSLA is not estopped from asserting the anti-assignment provisions in the plan to defeat CSS's standing in this case.

---

[57] 459 F.3d 573 n.3 (5th Cir. 2006).
[58] *French*, 906 F. Supp.2d at 579 (citing *High*, 459 F.3d at 573, n.3).
[59] *Id.* (quoting *Burstein v. Retirement Account Plan for Emps. of Allegheny Health Educ. & Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003)).
[60] *Id.* (citing Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1553 (3d Cir. 1996) (citing *Smith v. Hartford Ins. Grp.*, 6 F.3d 131, 142 (3d Cir. 1993))).
[61] *Id.* (citing *Kurz*, 96 F.3d at 1553 and *Smith*, 6 F.3d at 142).

### III. CONCLUSION

For the written reasons assigned, BCBSLA's *Motion to Dismiss Plaintiff's Complaint*[62] is GRANTED. CSS has not met its Rule 12(b)(1) burden of demonstrating that it has derivative standing to bring this lawsuit on behalf of the plan participants/beneficiaries identified. Therefore, this matter is dismissed without prejudice for lack of subject matter jurisdiction.

*Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 20th day of August, 2018.

*[signature: Shelly D. Dick]*

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[62] Rec. Doc. No. 14.

Document Number: 47191

Page 15 of 15